# Case No. 24-1753

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OLUWAKEMI ADEWOL, ET
AL,

*Plaintiff-Appellant*

v.

TGINESIS LLC,

*Defendant-Appellee*

On Appeal from the United States District Court
For the District of Maryland, No. GLR-23-00509
Before the Honorable George L. Russell III

## REPLY BRIEF OF APPELLANT

Steffan T. Keeton

The Keeton Firm LLC
100 S. Commons,
Ste. 102
Pittsburgh, PA 15212
Telephone: (888) 412-5291
stkeeton@keetonfirm.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**INTRODUCTION**                                                                    **1**

**ARGUMENT**                                                                        **2**

**A.**    **Plaintiff's Interpretation of the Product's Label Is Plausible, Reasonable, and Well-Sourced.**    **5**

**B.**    **The District Court Erred by Conducting an Independent Expedition to Obtain Extrinsic Evidence Not Attached nor Integral to the Complaint.**    **14**

**C.**    **The District Court Erred By Creating and Relying Upon Critical "Facts" to Dismiss the Complaint**    **16**

**D.**    **Plaintiff Alleges a Cognizable Injury**                                    **17**

**CONCLUSION**                                                                      **18**

**CERTIFICATE OF COMPLIANCE**                                                       **19**

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................7, 8, 14, 15

*Ayres v. Ocwen Loan Servicing, LLC*,
    129 F. Supp. 3d 249 (D. Md. 2015).............................................................................25

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011).........................................................................................7

*Bazemore v. Best Buy*,
    957 F.3d 195 (4th Cir. Apr. 21, 2020) ..........................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................8, 14, 16, 18

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020)...............................................................................14, 19

*Binakonsky v. JM Brands, Inc.*,
    2022 WL 2757674 (W.D. Pa. July 14, 2022) .............................................................21

*Brady v. Bayer Corp.*,
    237 Cal. Rptr. 3d 683 (2018) ......................................................................................22

*Brown v. Hain Celestial Grp., Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) .......................................................................22

*Carey v. Throwe*,
    Case No. 19-1194, 2020 WL 2071060 (4th Cir. Apr. 30, 2020) ..................................8

*Corpuz v. Bayer Corp.*,
    No. 22-CV-1085-MMA (JLB), 2024 WL 69908 (S.D. Cal. Jan. 5, 2024)....................20

*Dolgaleva v. Virginia Beach City Pub. Sch.*,
    364 F. App'x 820 (4th Cir. 2010)................................................................................10

*Dumont v. Reily Foods Co.*,
    934 F.3d 35 (1st Cir. 2019).........................................................................................18

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011).......................................................................................10

*Early v. Henry Thayer Co., Inc.*,
    2021 WL 3089025 (E.D. Mo. July 22, 2021) .................................................11, 21, 22

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999).......................................................................................25

*Electric Props. East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014).......................................................................................19

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
   23 F.4th 1195 (9th Cir. 2022) ........................................................................................15

*Garnett v. Remedi Seniorcare of Virginia, LLC*,
   892 F.3d 140 (4th Cir. 2018)...........................................................................................7

*Giant Food, Inc. v. F.T.C.*,
   322 F.2d 977 (D.C. Cir. 1963) .......................................................................................19

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008)...........................................................................................8

*Goldemberg v. Johnson & Johnson*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)...........................................................................21, 22

*Gregorio v. Clorox Co.*,
   No. 17-CV-03824-PJH, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) ...............................20

*Guerrero v. Ollie's Bargain Outlet, Inc.*,
   No. 22-1402, 2024 WL 3928094 (4th Cir. Aug. 26, 2024) ...............................................9

*Hall v. DIRECTV, LLC*,
   846 F.3d 757 (4th Cir. 2017)...........................................................................................8

*Hately v. Watts*,
   917 F.3d 770 (4th Cir. 2019).............................................................................................7

*Hill, By & Through Covington v. Briggs & Stratton*,
   856 F.2d 186 (4th Cir. 1988).........................................................................................15

*Holve v. McCormick & Co., Inc.*,
   334 F. Supp. 3d 535 (W.D.N.Y. 2018) .........................................................................21

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. MDL 13-2438 PSG PLAX,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)................................................................22

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008).......................................................................................16

*Jou v. Kimberly-Clark Corp.*,
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ..............................................................20

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)........................................................................................11

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir.2001)..........................................................................................10

*Lloyd v. Gen. Motors Corp.*,
   397 Md. 108, 143, 916 A.2d 257 (Md. 2007)................................................................25

*Lozano v. Walmart, Inc.*,
   No. CV 23-4500-SPG-MAR, 2024 WL 412606 (C.D. Cal. Feb. 1, 2024).......................20

*Maisel v. S.C. Johnson & Son, Inc.*,
No. 21-CV-00413-TSH, 2021 WL 1788397 (N.D. Cal. May 5, 2021) ................................20

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ..........................................................................................18

*Moore, v. GLAXOSMITHKLINE*,
No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ...............................20

*Morales v. Unilever U.S., Inc.*,
No. CIV. 2:13-2213 WBS E, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ...................20, 23

*Munsell v. Colgate-Palmolive Co.*,
463 F. Supp. 3d 43 (D. Mass. 2020) ...................................................................................21

*Nanni v. Aberdeen Marketplace, Inc.*,
878 F.3d 447 (4th Cir. 2017) ................................................................................................8

*Nolan v. Lab'y Corp. of Am. Holdings*,
No. 23-1282, 2024 WL 1554760 (4th Cir. Apr. 10, 2024) .................................................15

*Orrico v. Nordic Naturals., Inc.*,
No. 22-CV-03195-NRM-CLP, 2023 WL 6308015 (E.D.N.Y. Sept. 28, 2023) .........21, 22, 24

*Paulino v. Conopco, Inc.*,
No. 14-CV-5145 (JG)(RML), 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ..............21, 22

*Phillips v. LCI Int'l Inc.*,
190 F.3d 609 (4th Cir. 1999) ................................................................................................9

*Przybylak v. Bissell Better Life LLC*,
No. CV 19-2038 PA (GJSX), 2019 WL 8060076 (C.D. Cal. July 19, 2019) ......................20

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ..............................................................................................18

*Robinson v. Williams*,
59 F.4th 113 (4th Cir. 2023) ...............................................................................................13

*Rochon v. City of Angola, La.*,
122 F.3d 319 (5th Cir. 1997) ..............................................................................................15

*Sebastian v. Kimberly-Clark Corp.*,
2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ...............................................................20, 23

*Sec'y of State for Defence v. Trimble Navigation Ltd.*,
484 F.3d 700 (4th Cir. 2007) ................................................................................................9

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........................................................................................15, 17

*Whitney v. Guys, Inc.*,
700 F.3d 1118 (8th Cir. 2012) .............................................................................................16

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) ..............................................................................................18

iv

*Wright v. North Carolina*,
  787 F.3d 256 (4th Cir. 2015)..............................................................................................................8

*York v. Andalou Naturals, Inc.*,
  2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) ................................................................................21, 23

# INTRODUCTION

Should a court dismiss a plausible and sufficiently pled claim because it agrees more with another potential interpretation raise by a defendant?

Should a court conduct an independent investigation to obtain materials that were never presented to a consumer at the time of purchase to support a defendant's argument?

Should a court assume a critical fact not in evidence to support a defendant's argument?

Should a court ignore an adequately pled injury because it feels that another pled injury is deficient?

The answer to each question is no.

Should a Court that agrees more with one of two plausible interpretations, conducts independent research for extraneous evidence, assumes facts not in evidence, ignores an adequately pled injury, *at a minimum*, grant leave to amend to improve upon perceived deficiencies?

Yes.

However, in the case *sub judice*, the District Court did the opposite in each instance, and the District Court's Order dismissing this action should be reversed.

# ARGUMENT

In its *de novo* review of the complaint, Plaintiff respectfully requests this Court to review the case free of the distraction and the erroneous facts relied upon in the district court.

The consumer's interaction with the Product before purchase is not complex. A consumer walks into a health and beauty store that contains a variety of natural and synthetic products. In the shopping experience, the consumer discovers a vitamin product and notices that it claims to be "NATURAL." Rather, the Product proclaims "Thank God It's NATURAL." The "It's" is perceived by the reasonable consumer to reference the product itself. On the line where the representation is made, "NATURAL" is the only word bolded and the only word presented in capital letters. The product is further described as a "VITAMIN[]" that contains both Biotin and Vitamin C. Lastly, the label claims that it "supports healthy hair growth, stronger nails, and supple skin."

Upon this reasonable review of the label, the consumer believes that the vitamin is both natural and conducive to healthy hair growth, stronger nails, and supple skin. A consumer in a health and beauty store buys vitamins that are represented to be "natural" when they are not. The consumer relied upon a misrepresentation and was economically injured in the process.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to "accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Nolan v. Lab'y Corp. of Am. Holdings*, No. 23-1282, 2024 WL 1554760, at *4 (4th Cir. Apr. 10, 2024). "[D]ismissal will be affirmed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rochon v. City of Angola, La.*, 122 F.3d 319, 320 (5th Cir. 1997); *accord Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022). "In accordance with Federal Rules liberal policy towards pleadings, the motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted." *Hill, By & Through Covington v. Briggs & Stratton*, 856 F.2d 186 (4th Cir. 1988). The pleading "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

An allegation of deceptiveness is not a conclusion or question of law that the court can simply reject on a motion to dismiss based on the individual judge's evaluation of whether the defendant's alleged conduct is deceptive. Vitally, under the reasonable consumer standard, "'[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to

3

dismiss." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019) ("[W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead' reasonably acting, hazelnut-loving consumers."). The reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). There were ample facts alleged from which a trier of fact could find Defendant's practices deceptive. The Complaint's allegations are supported by numerous sources including academic studies,[1] FDA guidance,[2] FTC guidance,[3] and even public product reviews showing the experiences of other class members that have been similarly deceived.[4]

Here, the District Court set aside Plaintiff's plausible allegations supported by these sources because it felt that Defendant's interpretation was more plausible. In this process, the District Court created critical facts that were not supported by the record, conducted an independent expedition to discover evidence that was never

---

[1] JA014, ¶40 n.10.
[2] JA017, ¶48(b) n.15.
[3] JA013-014, ¶36; ¶38; ¶39 n.9.
[4] JA019, ¶58.

presented to the Plaintiff prior to her purchase, and ignored Plaintiff's sound allegations of economic injury.

### A. Plaintiff's Interpretation of the Product's Label Is Plausible, Reasonable, and Well-Sourced.

Plaintiff's interpretation and the case outlined in the complaint is neither novel nor unique.[5] Strikingly similar cases not only near-universally survive motions to dismiss but also are regularly certified as class actions. *See, e.g.*, *Drake v. Bayer Healthcare LLC*, No. 22-CV-1085-MMA (JLB), 2024 WL 4204921, at *6 (S.D. Cal. Sept. 16, 2024) (certifying class of deceived consumers where "natural" vitamins actually contained synthetic ingredients); *Corpuz v. Bayer Corp.*, No. 22-CV-1085-MMA (JLB), 2023 WL 2292579 (S.D. Cal. Feb. 28, 2023) (rejecting arguments for dismissal that are strikingly similar to the arguments raised by Defendant in the case *sub judice*).

Defendant's analysis confuses the reasonable consumer standard. The presentation of one potential interpretation of the Product's label does not nullify any other *reasonable* interpretation. Simply put, the motion to dismiss stage is not

---

[5] Courts for over thirty years have similarly interpreted the use of "natural" in tradenames involving natural vitamins like the Products at issue in this action. *See, e.g.*, *Good 'N Nat. v. Nature's Bounty, Inc.*, No. CIV. A. 87-662, 1990 WL 127126, at *5 (D.N.J. Aug. 30, 1990) ("The predominant import of ['Good 'N Natural'] is to describe an essential distinguishing characteristic of the products: they are composed of natural ingredients.").

the proper forum for a battle of competing interpretations or theories. While a countering interpretation may present a valid defense at trial, it is not a defendant's magic bullet to eliminate a case at this early stage.

Plaintiff's interpretation of the Product's label is plausible, reasonable, and well-sourced. Near universally, courts, economists, and marketing professionals have concluded that to reasonable consumers "natural" is synonymous with "all natural."[6] This is confirmed by reviews and complaints from other class members in the case *sub judice*.[7] On this issue, Defendant only points to two circuit cases which are distinguishable from the case *sub judice*.

In *Axon*, unlike the case *sub judice*, the "natural" question concerned a contaminant (glyphosate) rather than an intentionally added ingredient (citric acid, allura red). *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) ("First, we agree with the district court that the presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name 'Florida Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate."; *see also Barton v. Pret A Manger (USA) Ltd.*,

---

[6] *See, e.g.*, JA014, ¶40 n.10.
[7] JA019, ¶58.

535 F. Supp. 3d 225, 240 (S.D.N.Y. 2021) ("[T]here is a distinction between contaminants and synthetic substances included in a product as an ingredient.").

Although Defendant cites *McGinity*, Defendant misinterprets its holding. *McGinity* did not eliminate "natural" cases. Rather, it primarily concerned the ambiguous term "Nature Fusion." *Lozano v. Walmart, Inc.*, No. CV 23-4500-SPG-MAR, 2024 WL 412606, at *10 (C.D. Cal. Feb. 1, 2024) (applying *McGinity* and ruling that "Defendant's use of the sole word 'natural' to describe the Products, combined with images of fruit, purportedly gives the deliberate representation that the Products are wholly natural."); *Corpuz*, 2024 WL 69908 at *4 ("Although the Court agrees with the Ninth Circuit that the phrase 'Nature Fusion' is ambiguous because it 'could mean any of a number of things: that the products are made with a mixture of natural and synthetic ingredients,' […] this is wholly different than Defendant's use of the singular word 'natural' on its labels.").

Just a year later, Judge Gould – *McGinity*'s author – clarified this in *Whiteside*. In *Whiteside*, the Ninth Circuit rejected a similar argument made by Defendant. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 782 (9th Cir. 2024) ("Defendant's reliance on *McGinity* is misplaced. The representations at issue here are materially different than those at issue in that case. Although "plant-based" could be interpreted in different ways, it plausibly conveys a concrete and unambiguous meaning to a reasonable customer: that the product is entirely plant-

based and exclusively contains "natural" materials. This stands in direct contrast to the all-but-meaningless marketing term "Nature Fusion" in *McGinity*."). The *Whiteside* court held that on a 12(b)(6) motion, a label "may have two possible meanings, so long as the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning." *Id.* Simply put, when a Plaintiff presents a plausible theory of deception, her burden is met regardless of the existence of another plausible interpretation. In other words, "a tie goes to the plaintiff when there are multiple plausible theories at the pleadings stage of litigation." *Electric Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014); *see also Giant Food, Inc. v. F.T.C.*, 322 F.2d 977, 981 (D.C. Cir. 1963) (a statement or omission may convey more than one reasonable meaning, and if one of those meanings is deceptive, it is an actionable deception.).

With the circuit court cases resolved, Plaintiff could shift to a case-by-case analysis of the plethora of district court cases throughout the nation, but those cases are battlefields where Defendant's arguments have universally failed.[8]

---

[8] *See, e.g.*, *Fleming v. Dr. Squatch, LLC*, No. 22 C 4842, 2024 WL 1676943, at *1 (N.D. Ill. Apr. 18, 2024) (rejecting similar arguments against "MEN'S NATURAL SHAMPOO"); ., *Corpuz v. Bayer Corp.*, No. 22-CV-1085-MMA (JLB), 2024 WL 69908, at *3 (S.D. Cal. Jan. 5, 2024) (holding that "natural" may plausibly indicate that a product does not contain synthetic ingredients); *Lozano v. Walmart, Inc.*, No. CV 23-4500-SPG-MAR, 2024 WL 412606, at *10 (C.D. Cal. Feb. 1, 2024) (holding that "natural" plausibly informs consumers that a product does not contain

synthetic ingredients). *Moore, v. GLAXOSMITHKLINE*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *8 (N.D. Cal. Aug. 6, 2021) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-natural ingredients."); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *3 (N.D. Cal. May 5, 2021) (accepting plaintiff's interpretation that "natural" labeling could be interpreted by a reasonable consumer as containing only natural ingredients); *Gregorio v. Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at *4 (N.D. Cal. Feb. 6, 2018) ("[i]t is not unreasonable as a matter of law to expect a product labeled 'naturally derived' to contain no synthetic ingredients ... [a]nd "the phrase ['naturally derived'] may be tantamount to, or at least could reasonably be understood to mean 'all natural' or '100% natural."); *Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) (holding that "Natural Care" product name could lead a reasonable consumer to believe that the product is free of synthetic ingredients); *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) (holding similarly); and *Morales v. Unilever U.S., Inc.*, No. CIV. 2:13-2213 WBS E, 2014 WL 1389613, at *1,*7 (E.D. Cal. Apr. 9, 2014) (denying motion to dismiss claims under consumer protection statutes that "TRESemmé Naturals" hair care products contained synthetic ingredients; holding that the court "cannot conclude at [the motion to dismiss] stage of the litigation that a reasonable consumer would not be misled by the term 'natural' or 'Naturals'"); *Orrico v. Nordic Naturals., Inc.*, No. 22-CV-03195-NRM-CLP, 2023 WL 6308015, at *6 (E.D.N.Y. Sept. 28, 2023) ("[T]he Court cannot conclude that no reasonable consumer would interpret the brand name "Nordic Naturals" to indicate that Defendant's Products were, in fact, comprised entirely of natural ingredients."); *York v. Andalou Naturals, Inc.*, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) (holding similarly for "Andalou Naturals" representation); *Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG)(RML), 2015 WL 4895234, at *3–5 (E.D.N.Y. Aug. 17, 2015) (holding similarly for "Suave Naturals" representation); *Goldemberg v. Johnson & Johnson*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) (holding similarly for "Active Naturals" representation); *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52 (D. Mass. 2020) (holding consumer reliance "on the prominent display of the word 'natural' on the front of the package is, at this stage, a factual question to be addressed on a full record by the factfinder."); *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 558 (W.D.N.Y. 2018) (holding that "natural" labeling could convey to a reasonable consumer that the products lacked synthetic ingredients and form basis for a consumer protection claim); *Binakonsky v. JM Brands, Inc.*, 2022 WL 2757674, at *5 (W.D. Pa. July 14, 2022) (holding

In its attack on Plaintiff's interpretation of the Product's label, the Defendant tosses every possible microscopic element at the Court with the hope that an accumulation of perceived "clarifying" elements will somehow disrupt Defendant's deception. However, each argument – in isolation and in total – fails to disturb Plaintiff's plausible interpretation of the Product's label.

In general, Defendant parses every aspect of the label to an extreme degree with the hope that one tiny aspect will convince the Court to ignore the conclusions of marketing professionals, economists, courts, and other class members.

First, Defendant claims that "NATURAL" is used as part of a brand name and thus cannot be deceptive to a reasonable consumer. Not so.[9]

Second, Defendant claims that a trademark symbol nullifies consumer deception. Once again, that similarly fails.[10]

_____

similarly); *Early*, 2021 WL 3089025, at *15 (holding similarly for "natural" and "natural remedies" representations).

[9] See *Orrico*, 2023 WL 6308015, at *6 ("[T]he Court cannot conclude that no reasonable consumer would interpret the brand name "Nordic Naturals" to indicate that Defendant's Products were, in fact, comprised entirely of natural ingredients."); *Paulino*, 2015 WL 4895234, at *3–5 (holding similarly for "Suave Naturals"); *Goldemberg*, 8 F. Supp. 3d 467 (holding similarly for "Active Naturals"); *Early*, 2021 WL 3089025, at *15 (holding similarly for "Thayer's Natural Remedies"); *Sebastian*, 2017 WL 6497675, at *4 (holding similarly for "Natural Care"); *Morales*, 2014 WL 1389613, at *7 (holding similarly for "TRESemmé Naturals"); *York v. Andalou Naturals*, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) (holding similarly for "Andalou Naturals").

[10] *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 897 (N.D. Cal. 2012) ("Avalon Organics" brand name "identif[ies] the contents as organic."); *In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. MDL 13-2438 PSG PLAX,

Third, Defendant claims that the presence of an asterisk alerts consumers that the Product is not "natural." Despite the District Court's efforts to conclude that it does, it does not and Defendant failed to present any argument concerning the true contents of the language attached to that asterisk.

Fourth, Defendant claims that the fact that "NATURAL" – despite being the only bolded and word presented in capital letters on its line – is smaller than "TGIN" and therefore alerts consumers that the Product is not natural. This uncited conclusion fails to persuade.

Fifth, Defendant claims that the label tells consumers that the Product contains Biotin and Vitamin C, and because these ingredients *can* be either synthetic or natural, that alerts consumers that the Product is not natural. "This conclusion does not square with logic,"[11] and contains Defendant's admission that the Product contains even more synthetic ingredients than alleged in the complaint.

Sixth, Defendant claims that a reasonable consumer is expected to read the ingredients list to defeat Defendant's deception on the front label. Circuit courts

---

2014 WL 5311272, at *2 (C.D. Cal. Sept. 4, 2014) (finding defendant's brand name "5-hour Energy" could form the basis of an express warranty); *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 700 (2018) ("We will not assume that the illegible little dot off to the bottom of 'One A Day' on the label—the '®'—is sufficient, as a matter of law, to warn consumers that "One A Day" is only a brand name and conveys no descriptive content. Even sophisticated consumers who might recognize the trademark symbol as indicating a brand name qua brand name still might take the brand name as indicating a promise about the product's content.").
[11] *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1024 (N.D. Cal. 2013).

universally have held that consumers are not required to examine other sides of a product's packaging when the front label is deceptive.[12] Moreover, there is no indication that a reasonable consumer would understand that the synthetic ingredients listed are synthetic when there is no information alerting the consumer to their natural or synthetic "status." In this section, Defendant cites to only a single case within the Fourth Circuit or applying Maryland law, and it is readily distinguishable because in *Bradby*, the product clearly lists "artificial flavors" as an ingredient while Defendant's Product makes no indication of the synthetic nature of any of the ingredients. Further, viewing the ingredients list - if anything - further confirms the deception because it lists "Natural Blueberry Flavour" and "Natural Raspberry Flavour" immediately before allura red. Lastly, Defendant contends that a reasonable consumer would know that these ingredients are synthetic by pointing to consumer reviews cited in the Complaint. Once again, this fails to persuade because the consumer reviews seem to have been made as a post-purchase action ("I was surprised [to] receive a synthetic product[.]") and given the negative review, each would be unlikely to have purchased the product if they had known the truth.

---

[12] In *Whiteside*, the Ninth Circuit confirmed that "[o]ur position is consistent with that of our sister circuits." 108 F.4th at 781 n.3 (9th Cir. 2024) (summarizing that this position was consistent with recent holdings in the First Circuit, Second Circuit, and Seventh Circuit).

Seventh, Defendant argues that the shape and color of the vitamins would alert consumers that the Product is not natural because they are pink and shaped like bears. Once again, this argument fails to make sense because the primary flavor of the Product is raspberry which is pink in its natural environment nor is there anything inherently synthetic about a bear.[13]

Eighth, Defendant claims that Plaintiff fails to examine the full context of the Product's label. Not so. While the single word - "NATURAL" - can form the basis of a consumer deception claim when a product contains synthetic ingredients, the context of the Product's packaging reinforces the Product's misrepresentation as natural. The Product's label contains the statement "Thank God It's NATURAL" in combination with "GUMMY VITAMINS," "Dietary Supplement," "supports healthy hair growth, stronger nails and supple skin," and "WILD GROWTH VITAMINS," "BIOTIN + VITAMIN C." These representations further support that the Product is a natural vitamin product. Moreover, the context of the purchase – in a physical store containing natural as well as synthetic health and beauty products – further emphasizes the distinction. While the Defendant attempts to insert "context" that never appeared on the Product's label nor presented to Plaintiff in her purchase at a *physical* store, this information cannot be used in the

---

[13] If the Product was presented in the shape of a clearly synthetic item like Mr. Yuk or a poison symbol, Defendant's argument *might* support dismissal.

analysis because Plaintiff was never exposed to it. Placed in the proper context of her purchase, the Product is deceptive to a reasonable consumer.

### B. The District Court Erred by Conducting an Independent Expedition to Obtain Extrinsic Evidence Not Attached nor Integral to the Complaint.

Rather than limiting itself to the four corners of the Complaint, the District Court conducted its own factual research, sought extrinsic evidence, scanned the Internet to find evidence that aligned with Defendant's argument, and relied upon that information to erroneously dismiss the Complaint with prejudice. This is improper. *Guerrero v. Ollie's Bargain Outlet, Inc.*, No. 22-1402, 2024 WL 3928094, at *4 (4th Cir. Aug. 26, 2024) ("At the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto.").

The District Court's reliance on extraneous materials supports reversal. As outlined in the opening brief, the District Court is not permitted to rely upon extrinsic evidence that is neither attached nor integral to the complaint."[A]s a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Assoc., Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and citation omitted). Further disturbing, the Court is not allowed to seek out extrinsic evidence and conduct an independent investigation outside the courtroom into claims made before the Court without

notice to the Parties.[14] Additionally troubling is that the websites relied upon by the District Court are not inherently accurate. The websites were relied upon by the District Court over sixteen months after this litigation commenced, a period well outside the period of Plaintiff's purchases. There is a strong likelihood that the websites have changed over this long period of time, and an extremely strong likelihood that the websites have changed as a result of this litigation. Simply put, even if the sources cited by the District Court's independent research were deemed attached to or otherwise integral to the Complaint, the District Court's failure to obtain website information for the correct period of time renders the information not inherently accurate.

Setting aside the District Court's evidence expedition, the information is not relevant to the claims made by Plaintiff because Plaintiff was never exposed to any of the representations on these websites. A consumer cannot rely upon information that was never presented to them. *See, e.g.*, *Campbell v. Arizona Beverages USA LLC*, No. 22-CV-02752-JST, 2023 WL 2764123, at *8 (N.D. Cal. Mar. 31, 2023) (rejecting plaintiff's claims premised on representations made on defendant's website where plaintiff failed to indicate that they saw the representations); *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 809 (S.D. Ill. 2020)

---

[14] For example, while the Ulta website is referenced in Defendant's brief in support of its motion to dismiss, Defendant's website is never referenced in the brief.

("Should Consumers wish to present arguments going forward on the website statements regarding flavorings, they may seek to amend their complaint if they can plead facts indicating that they actually saw those statements."). If Plaintiff had ordered the Products from the online stores referenced by the District Court, then the lower court's reasoning might be successful. However, because Plaintiff never stated that she saw the individual representations relied upon by the District Court in dismissing her complaint, that information should not be used by the District Court in dismissing the action. *See Fleming v. Dr. Squatch, LLC*, No. 22 C 4842, 2024 WL 1676943, at *4 (N.D. Ill. Apr. 18, 2024) ("The Court will not presume that because she purchased the Product on Defendant's website, she also reviewed the ingredient list or was even aware of it.").

Rather than considering the facts contained in the Complaint, the District Court improperly sought extrinsic evidence and relied upon this extrinsic evidence in dismissing the Complaint with prejudice after concluding that "no reasonable consumer, purchasing a beauty product in a beauty store, would interpret the word 'natural' alone to mean that all of the product's ingredients are natural." This is improper.

### C.  The District Court Erred By Creating and Relying Upon Critical "Facts" to Dismiss the Complaint

In addition to relying upon information that was not presented to Plaintiff at the time of her purchase, the District Court also assumed critical evidence that was

not presented by any Party to the action. The District Court erroneously states and relies upon the critical "fact" that the asterisk on the front label directs the consumer to the ingredients list. The asterisk does not, and in creating this critical "fact," the District Court dismissed the action. At bottom, the District Court created this "fact" without any evidence, and then relied upon this "fact" when it held that no reasonable consumer could be deceived by the "natural" representation. This is improper. *Robinson v. Williams*, 59 F.4th 113, 119 (4th Cir. 2023) (vacating summary judgment and remanding where district court erroneously stated a critical fact).

### D. Plaintiff Alleges a Cognizable Injury

The District Court erroneously held that Plaintiff failed to plead a cognizable injury. In its rush to dismiss the case – and without leave to amend to highlight or clarify the injuries described in the Complaint – the District Court overlooked the fact that Plaintiff pleads an objectively identifiable loss including, but not limited to, the amount paid for the Product. JA020-022, ¶¶ 60-67; ¶66 ("Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they are "natural," Plaintiff and Class Members suffered an injury in the amount paid."). The amount paid is an objectively identifiable injury. Therefore, Plaintiff has pled an actual injury under the MCPA.

Whether the District Court determines that other injuries are not sufficiently pled is irrelevant when Plaintiff pleads sufficiently at least one injury, and leans on perceived deficiencies in these other injuries, is insufficient to dismiss a case with prejudice.

## CONCLUSION

For the above reasons, the District Court's Order of Dismissal should be REVERSED and the case REMANDED.

Respectfully submitted,

*/s/ Steffan T. Keeton*
Steffan T. Keeton
THE KEETON FIRM LLC
100 S. Commons, Ste. 102
Pittsburgh, PA 15212
stkeeton@keetonfirm.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that thisbrief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 32(f), the brief contains 5,702 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this wordprocessing system in preparing this certificate.

Respectfully submitted,

*/s/ Steffan T. Keeton*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on November 12, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Respectfully submitted,

*/s/ Steffan T. Keeton*